UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERRY N. HENDERSON,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: C08-985 CRD<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

    Plaintiff Terry Henderson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

    Plaintiff is a fifty-two-year-old man, forty-six years old at the alleged disability onset date. He has a high school education with some community college. Plaintiff applied for SSI and DIB in July 2004, alleging disability since March 2003 due to mental illness, posttraumatic stress disorder ("PTSD"), depression and impairments of his shoulders, arms and hands. His claim was denied initially and upon reconsideration, and he timely requested an ALJ hearing.

ORDER - 1

A *de novo* hearing before ALJ Araki was held on November 30, 2006. The ALJ heard testimony from two witnesses: a vocational expert and Plaintiff, who was represented by counsel, Susan Andrews, Esq. Administrative Record ("AR") at 515-90. The ALJ rendered an unfavorable decision on March 9, 2007, finding Plaintiff not disabled. Plaintiff requested review by the Appeals Council and review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On July 15, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Mr. Henderson bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 15, Finding 2. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case the ALJ found Plaintiff has the severe impairments of affective disorder, disorder of the muscle, ligaments, and facia, and status post gunshot wounds. AR 15, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. In this case the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 17, Finding 4.

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case determined Plaintiff retained the RFC to perform "light work." AR 17, Finding 5. The ALJ next found that Plaintiff could not perform any of his past relevant work. *Id.* at 21, Finding 6.

If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ found that Plaintiff could perform light unskilled work, and, based on vocational expert testimony, determined that Plaintiff retained the capacity to work at jobs such as housekeeping cleaner, production assembler, and bakery worker. AR 22. The ALJ therefore concluded Plaintiff was not disabled as defined in the SSA. AR 23.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in evaluating Plaintiff's psychological limitations?
2. Did the ALJ err in evaluating Plaintiff's physical limitations?
3. Did the ALJ err in assessing Plaintiff's work activities?

Dkt. No. 11 at 12.

## VI. DISCUSSION

Plaintiff alleges disability beginning in March 2003. In 1997 Plaintiff was the victim of an armed robbery that resulted in his being shot several times. Thereafter, Plaintiff was the victim of an unrelated physical attack that resulted in the loss of teeth and other injuries. The

ALJ noted that the two attacks "appear to have contributed to his mental health problems" and found Plaintiff to have the severe impairments of "affective disorder, disorder of the muscle, ligaments, and facia, and status post gunshot wounds." AR 15. Plaintiff asserts that the ALJ erred in evaluating the medical evidence and opinions regarding his mental and physical impairments, and erred in finding his ability to do work after his disability onset shows he was capable of some type of work activity. Dkt. 11 at 12.

A.  *The ALJ did not err in assessing Plaintiff's psychological impairments.*

Plaintiff asserts the ALJ erred in failing to properly assess the opinion of his treating psychiatrist, Dr. Rogers; disregarding the opinions of mental health workers, Mr. Turner and Ms. Stasyak; and discounting the opinions of two consulting physicians. Plaintiff also asserts the ALJ erred in giving too great weight to state agency physicians' opinions.

### Dr. Rogers

Plaintiff argues the ALJ did not note Dr. Rogers' assignment of a Global Assessment Functioning ("GAF") score[2] of 45 and that therefore his opinion should be given additional weight. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted). The rejection of an opinion of a treating physician based in part on the testimony of a nontreating, nonexamining medical advisor may be upheld. *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999), citing *Magallanes*, 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

---

[2] According to the American Psychiatric Association, *Diagnostic & Statistical Manual* p. 34 (4th ed. 2000) (DSM-IV-TR), a GAF rating of 51-60 indicates moderate symptoms or moderate difficulties in social, occupational or school functioning. A GAF rating of 41- 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

Here, the ALJ noted that, "[t]reating providers have given [Plaintiff] GAFs between 40 and 55." AR 16. In discussing Dr. Roger's and other opinions, the ALJ noted:

> The record in fact shows that the claimant's condition improved significantly with treatment and medication. Treatment records from April of 2003, one month after his alleged onset date, document his report that he was no longer feeling depressed. Records from October of 2003 read: "[s]ays he's feeling stable, good mood, sleeping ok with intact energy/appetite and interests. Has gotten housing and says he just got married." Keith Rogers, M.D., Ph.D., the claimant's treating psychiatrist, indicated that the claimant was stable at that time. The claimant in fact reported to the consultative psychiatrist in November of 2004 that he was doing well since being prescribed Wellbutrin. He again reported in March of 2005 that he was doing much better on Wellbutrin. As recently as June of 2005, the claimant stated that he was doing very well on Wellbutrin and well overall.

AR 19-20 (citations to ALJ exhibit records omitted). Thus, the ALJ noted that Plaintiff's treating providers gave him GAF scores ranging from 40 to 55; Dr. Rogers' assessed GAF of 45 is within that range. The ALJ otherwise discussed Dr. Rogers' observations and drew conclusions that are supported by substantial evidence in the record. The Court therefore finds the ALJ did not err in the assessment of Dr. Rogers' opinion.

### Dr. Smith; Dr. Anderson

Plaintiff argues the ALJ erred when he discounted the opinions of examining physicians, Dr. Smith and Dr. Anderson. The ALJ noted that Dr. Smith examined Plaintiff on only one occasion yet opined his impairments were very severe resulting in his inability to perform even sedentary work or participate in job search or employment classes. AR 20. The ALJ concluded that the record did not support such severe functional limitations and therefore gave the opinion little weight. *Id.* The ALJ noted that although consulting psychiatrist Dr. Anderson opined Plaintiff would have difficulty maintaining employment, she also expressed concern that he was not appropriately medicated, that his medications could be worsening his affective symptomatology, and that he might improve with different medication. AR 21. The ALJ gave Dr. Anderson's opinion "some but not great weight, as it does not accurately reflect the claimant's longitudinal functioning." *Id.* The consulting physicians, discussed below, contradict Dr. Smith's and Dr. Anderson's opinions. The Court finds the reduced weight assigned to both examining physician's opinions is based on specific and legitimate reasons supported by

substantial evidence in the record. *Magallanes*, 881 F.2d at 751-55. Therefore, the Court finds the ALJ did not err.

### State Agency Physicians

Plaintiff argues generally that the ALJ erred in giving significant weight to the consulting state agency physicians because they are nontreating and nonexamining, and that more weight should be given to the doctors who treated Plaintiff. The ALJ gave the agency doctors' opinions significant weight:

> [T]he state agency evaluators found the claimant had moderately limited ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. They concluded that the claimant could perform simple, repetitive tasks of one to two steps, in a position with minimal interpersonal contact, in a predictable setting.

AR 21. Although Plaintiff argues that the ALJ assigned too much weight to the state agency reviewing physicians and that more weight should be given to his treating and examining providers, he does not present any specific argument or flaw with the ALJ's assessment. The ALJ noted that the state agency evaluators assessed Plaintiff's mental RFC to be "moderately limited" in all categories but that he "could perform simple repetitive tasks of one to two steps, in a position with minimal interpersonal contact, in a predictable setting" giving the opinions "significant weight. AR 21. It is well-settled law that an ALJ must evaluate the opinion of a nonexamining state-agency doctor. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (discussing the weight owed a nonexaminer's opinion). Opinions from nonexamining medical sources are to be given less weight than treating or examining doctors; however, an ALJ must always evaluate the opinion of such a source and may not simply ignore it. *Id.* In other words, an ALJ must evaluate the opinion of a nonexamining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.). Here, the Court finds the weight assigned to the consulting physician's opinions is appropriately evaluated, based on specific and legitimate

reasons supported by substantial evidence in the record. The Court therefore finds the ALJ did not err in this regard.

### Mental Health Workers, Mr. Turner; Ms. Stasyak

Plaintiff argues that the ALJ failed to consider the opinion of mental health professional, Ms. Stasyak, and failed to address a report by his therapist, Mr. Turner. Plaintiff argues that Mr. Turner and Ms. Stasyack are not "nonacceptable medical sources" but "other sources" under the SSA and should be considered accordingly. Social Security Ruling 06-03p sets forth that licensed physicians are "acceptable medical sources" and explains the distinction between acceptable medical sources and other sources.[3] The label "other sources" includes persons other than "acceptable medical sources"; however, only acceptable medical sources can give medical opinions and be considered treating sources entitled to controlling weight. Here, Mr. Turner is a mental health counselor and Ms. Stasyack is a mental health professional; therefore, they are not "acceptable medical sources" but "other sources" which are reviewed by this Court under the lay witness standard, rather than the physician's standard of review. However, lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted). An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with medical evidence is one such reason. *Id*.

Ms. Stasyak is a licensed mental health professional who assessed Plaintiff at intake at Community Psychiatric Clinic ("CPC") in October 2004. AR 334-35. Plaintiff asserts that the

---

[3] Social Security Ruling 06-03p provides in part, "…only 'acceptable medical sources' can give us medical opinions... only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight… . In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to: Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists… . Information from these 'other sources' cannot establish the existence of a medically determinable impairment… SSR 06-03p.

ALJ failed to consider Ms. Stasyak's GAF assignment of 40 (AR 334-35) and her opinion that his "symptoms are severe enough to cause significant impairment in several important areas of functioning" (AR 335). The ALJ's written decision twice notes Ms. Stasyak's opinion by page and exhibit number, "12F/16" found at AR 334, noting that Plaintiff's treatment providers assessed his GAF ranging from 40 to 55 and noting reports of his subjective complaints. AR 16. Also, not inconsistent with Ms. Stasyak's opinion that Plaintiff's symptoms are severe enough to cause significant impairment in several important areas of functioning[4], the ALJ found that Plaintiff has limitations in several categories: "the claimant has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one episode of decompensation." AR 17. Therefore, the Court finds that while the ALJ did not explicitly assess what weight he assigned to Ms. Stasyak's opinion, the failure to do so in this instance constitutes harmless error. *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006).

With respect to Mr. Turner, Plaintiff's therapist at CPC, Plaintiff asserts the ALJ ignored his evaluation that included a diagnosis of acute mental illness with marked limitations, which Mr. Turner expected to last for at least one year. *See* AR 179. Plaintiff also assigns error to the Appeals Council's finding that 1) Mr. Turner is a "nonacceptable medical source" under SSA regulation, and 2) that Mr. Turner's report is a reflection of Plaintiff's subjective complaints rather than clinical observation. *See* Appeals Council Order at AR 5. As with Ms. Stasyak's report, the ALJ noted that Plaintiff reported particular symptoms to his providers and cited to a specific report of a visit Plaintiff had with Mr. Turner in January 2006. *See* AR 16 citing ALJ Exhibit 4F/2 (AR 177). However, other than referencing the symptoms Plaintiff reported, the ALJ did not assess the weight assigned to Mr. Turner's report. Regardless, the Court finds the ALJ's omission of a specific discussion of Mr. Turner's report harmless error because Mr. Turner is not an acceptable medical source that may provide a diagnosis, and because the ALJ otherwise accounted for Plaintiff's limitations that are supported by the record, much of which is

---

[4] The Court notes that Ms. Stasyak's opinion also states that Plaintiff frequently uses cocaine but the opinion does not weigh whether or how his drug use affects his GAF score. AR 334-35.

also noted by Mr. Turner. AR 177-79. Moreover, although not articulated by the ALJ and not subject to review by this Court[5], this Court agrees with the Appeals Council findings that Mr. Turner's report is "the product of your own subjective statements about activities rather than based on clinical observations made by the therapist and social workers who signed the document." The Appeals Council also noted that "[t]he report also indicates that you had not been compliant with your medications throughout that year at least in part due to your homelessness, but further states that medication and therapy regimens, if observed, should continue to reduce your symptoms." AR 5. This Court agrees; accordingly, there is no harmful error in the ALJ's failure to specifically weigh Mr. Turner's opinion. *Stout*, 454 F.3d 1050 at 1054-56.

   *B.    The ALJ did not err in assessing Plaintiff's physical impairments.*

Plaintiff argues that the ALJ "failed to consider newer evidence, referenced above, indicating disabling physical conditions involving Mr. Henderson's cervical spine, upper extremities and hands." Dkt. 11 at 17. Plaintiff's brief does not set forth arguments regarding any such evidence. However, the Court presumes, as does Defendant, that Plaintiff refers to evidence listed in the statement of facts at page 11 of Plaintiff's Opening Brief, which references his reports of pain, a 2005 x-ray report of his finger (AR 372), Dr. Smith's 2006 report of limitations in his upper extremity and cervical spine (AR 347), and a 2006 cervical spine x-ray (AR 371). Plaintiff also objects to the ALJ's reliance on the opinions of examining physicians, Dr. Miller and Dr. Martin.

Regarding Plaintiff's physical impairments, the ALJ found:

> [T]he claimant has a disorder of the muscle, ligaments, and facia related to gunshot wounds to the chest and shoulder he sustained in May of 1997. He did not require surgery and was discharged from the hospital after one day. Thereafter, he received minimal medical attention for his injuries, which were characterized as minimally severe. Although he complains of weakness in the upper left extremity and left side chest pain, this impairment was found to be stable. 6F/2. The claimant recently began to complain of right arm numbness.

---

[5] Plaintiff argues the Appeals Council made findings in error; however, this Court does not review Appeals Council orders; the Court's scope of review is limited to the ALJ's decision. 20 C.F.R. §§ 404.981, 422.210.

> 17F/75-76. The claimant had full range of motion of the shoulders, no evidence of neurologic damage, and minimal pain on examination. 6F/2; 8F/4, 6. He takes no prescription pain medications.
>
> Ernest Miller, M.D., performed an independent medical examination in November of 1999 to assess the claimant's elibibility for crime victim compensation. 8F/1-7. The only objective evidence of injury Dr. Miller found during the examination were scars. 8F/7. Dr. Miller concluded that the claimant "appears to have excellent physical recovery from the May 26, 1997 gunshot wounds. I agree with the opinion of Dr. Roscoe Martin that damage to the musculoskeletal system is absolutely minimal…there is a 0% impairment." 8F/6. Giving the claimant the benefit of the doubt, I find his disorder of the muscle, ligaments, and facia and status post gunshot wounds are severe impairments.

AR 17.

Although not subject to review here, this Court agrees with the Appeals Council's analysis regarding the physical impairment evidence Plaintiff cites:

> Your representative also indicated that you have cervical spine degeneration that is implicated in your complaints of hand numbness and/or pain. In coming to this conclusion, your representative emphasized a report as Exhibit 17F3 that discounted the impact of mild degeneration in your little finger as the source of your complaints, but then showed possible narrowing of your cervical spine that could be an alternative explanation for the source of your alleged symptoms. Nonetheless, while this preliminary opinion was based on x-ray readings, possible encroachment was later ruled out through magnetic imaging (Exhibit 17F1). The administrative law judge conceded that you have some musculoskeletal changes at Finding 3 in the decision. Nonetheless, the administrative law judge explained the consideration given to this impairment in the residual functional capacity (dec., primarily at pages 4 and 5).

AR 5. This Court agrees with the Appeals Council's rationale: Exhibit 17F1 is an MRI report showing all areas are normal or mild. AR 370. Thus, substantial evidence supports the ALJ's decision; as such, it is not in error.

    *C.    The ALJ did not err in assessing Plaintiff's work activity after his alleged onset date.*

Plaintiff argues that the ALJ erred in assessing his work after his alleged disability onset date and finding it is persuasive evidence that he is capable of some type of work activity. Dkt. 11 at 18. In assessing Plaintiff's daily living activities, the ALJ found:

ORDER - 11

> …[T]he claimant's reported activities do not comport with his reported limitations. With respect to his activities of daily living, he prepares meals, goes to the library, goes shopping, and uses public transportation. He retains sufficient social functioning that he was able to get married in May of 2003, less than three months after his alleged onset date. He can go out in public alone. Cognitively, the claimant pursued and in fact obtained Microsoft computer certification. His hobbies are reading and going for walks. With regard to physical functioning, the claimant has expressed an interest in returning to heavy manual labor.
>
> I note that the claimant actually worked after the date he alleges he became disabled and unable to work. In March of 2004, the claimant started a job doing maintenance work at Bastyr University. He then worked as a lab technician for Shasta Beverages during May and June of 2004. Unfortunately, the claimant self-discontinued his Zoloft and lost his job shortly thereafter due to an increase in mental health symptoms. In addition, mental health progress notes from August of 2005 show that the claimant was working part-time through the Steps program doing assembly work. Treatment records from April of 2006 indicate that the claimant was working as a computer tech. The fact that the claimant was able to work at all after his alleged impairments arose is persuasive evidence that he is capable of some type of work activity.

AR 20 (citations to ALJ record omitted). Plaintiff argues that: his earnings records do not reflect any earnings from Bastyr University or work as a computer technician; the Shasta job should be considered an unsuccessful work attempt because he quit due to his impairments; and his part time STEPS assembly work earnings were low and should therefore be considered an unsuccessful work attempt.

The Court notes Plaintiff does not deny working at Bastyr University or as a computer technician but states only that his earnings statement does not show income from these jobs. With respect to all of the jobs, the ALJ did not find any of them amounted to substantial gainful activity at step one (20 C.F.R. section 404.1572). AR 15, Finding 1. Nor did the ALJ find Plaintiff was able to work full time because of any of the limited work he did during his alleged disability period. The ALJ found only that the jobs, however minimal, further demonstrated he was capable of some type of work activity. The ALJ noted Plaintiff's record of working as one factor among others, such as Plaintiff takes care of himself and got married, in assessing his activities of daily living and concluding that his "reported activities do not comport with his reported limitations." AR 20. Under 20 C.F.R. section 404.1529(c)(3), the ALJ may consider

ORDER - 12

the claimant's daily activities in addition to other factors in evaluating the intensity and persistence of symptoms and determining the extent to which symptoms limit capacity for work. *Id.* The Court finds the ALJ's assessment of Plaintiff's daily activities, including his work activity during the alleged disability period, is based on substantial evidence in the record and is therefore not in error.

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case DISMISSED.

DATED this 22nd day of January, 2009

Carolyn R. Dimmick
United States District Judge